IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARL MARTINEZ,

        Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.

Civ. No. 6:14-cv-01703-MC

OPINION AND ORDER

MCSHANE, Judge:

        Plaintiff Carl Martinez seeks judicial review of the Commissioner's decision denying his

application for disability insurance benefits (DIB) and supplemental security income (SSI) under

Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and

1383(c)(3). Because the Commissioner's decision is based on proper legal standards and

supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## BACKGROUND

        Plaintiff filed applications for DIB and SSI on June 23, 2010. Tr. 19. Following a denial

of benefits, plaintiff requested a hearing before an administrative law judge (ALJ). On July 2,

2013, an ALJ determined plaintiff was not disabled. Tr. 19-32. The Appeals Council then

denied plaintiff's request for review. Tr. 1-3. This appeal followed.

1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) finding that he had the residual functional capacity (RFC) to perform light work, rather than sedentary work, and had he been properly limited to sedentary work, the Agency's sedentary grid rule would require that he be found disabled as of his fiftieth birthday; and (2) failing to follow the Agency's Program Operations Manual System (POMS) rules applicable when a claimant's exertional capacity falls between two medical-vocational rules. Pl.'s Br. 2.

**I.    Classification of Work Restriction in RFC**

Plaintiff "does not dispute the ALJ's factual findings as to his functional abilities," Pl.'s Reply Br. 2. Rather, plaintiff argues that "the RFC as written is one for sedentary work under the Agency's own controlling policy rules, regulations, and definitions" and if he had been properly "limited to sedentary work, which the ALJ found in all but name, the agency's governing rules and policies require him to be found definitively disabled as of his fiftieth

birthday." *Id.* at 3-4. Specifically, plaintiff argues that because the regulations require being on one's feet "occasionally" and limit standing or walking to two hours per day at the sedentary level of exertion, and because the RFC limits his standing and walking to two hours per day, then "regardless of how the ALJ characterized the RFC in name (by calling it light), the limitations he included in it are, by regulatory definition, an RFC for sedentary work." *Id.* (internal quotations omitted). Plaintiff further argues that the ALJ erred by relying on the vocational expert's (VE) testimony "because any jobs identified under the ALJ's RFC finding would need to be performed at a sedentary exertional level under Agency policy" and an "ALJ may not rely on VE testimony that is contrary to Agency policy." Pl.'s Br. 7.

The ALJ found that plaintiff had the RFC to perform light work, but that he could stand and/or walk for only two hours in an eight hour workday; sit for six hours in an eight hour workday; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, or crawl; never climb ladders of scaffolds; reach overhead with his right arm on a less-than occasional basis; and was to avoid concentrated exposure to hazards due to balance problems associated with his physical conditions. Tr. 24. The ALJ also found that due to plaintiff's mental limitations, he had non-exertional limitations that enabled him to perform only simple, repetitive tasks, and to perform work that involved only minimal social contact. *Id.*

At the hearing on March 19, 2013, the ALJ asked a VE what occupations someone with plaintiff's RFC, as well as the ability to lift, carry, push, or pull twenty pounds occasionally or ten pounds frequently, could do. Tr. 64. The VE testified that someone with those restrictions could perform the light, unskilled or semi-skilled occupations of: (1) an electronics worker (DOT # 726.687-010), which has 225,632 positions nationally and 3,611 positions in Oregon; (2) a small products assembler II (DOT # 739.687-030), which has 186,634 positions nationally and

2,987 positions in Oregon; and (3) a packing line worker (DOT # 753.687-030), which has

322,761 positions nationally and 3,314 positions in Oregon. Tr. 65. The VE noted, however,

that while someone with the ability to stand and walk for only two hours during an eight hour

day could perform the small products assembly and electronics worker jobs without restriction

because that "work is done at a work bench so you could sit and stand at will," the number of

packing line jobs would be reduced by about fifty percent to 150,000 positions nationally and

1,500 in Oregon. Tr. 66. The ALJ adopted the VE's opinion at step five. Tr. 29.

      A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

423(d)(1)(A). The Social Security Administration utilizes a five step sequential evaluation to

determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial

burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or

her burden with respect to the first four steps, the burden shifts to the Commissioner for step

five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the

claimant is capable of making an adjustment to other work after considering the claimant's RFC,

age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262

F.3d 949, 953-54 (9th Cir. 2001). The ALJ can meet this burden at step five either through use

of the Medical- Vocational Guidelines ("the Grids") or with a VE. 20 C.F.R. § 416.966.

      The Grids are a matrix for handling claims that involve substantially uniform levels of

impairment, 20 C.F.R. Part 404, Subpt. P, App. 2, and allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims. *Heckler v. Campbell*, 461 U.S. 458,460-62 (1983). They consist of tables showing various combinations of physical exertional levels (sedentary, light, medium, heavy, and very heavy), which "are differentiated primarily by step increases in lifting capacities." *Desrosiers v. Sec. of Health and Human Serv.*, 846 F.2d 573, 576 (9th Cir. 2006). The Grids can only be used when they "completely and accurately represent a claimant's limitations." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). When an "individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability . . . [and] a [VE]'s assistance is advisable . . ." SSR 83-12; see also *Moore v. Apfel*, 216 F.3d 864, 870 (9th Cir. 2000) "when a claimant suffers from both exertional and nonexertional limitations, the grids are only a framework and a VE must be consulted."

The regulations define sedentary work as "involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like file dockets, ledgers, and small tools" and state that, "although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met . . ." SSR 83-10; see also SSR 83-14. The regulations define "occasionally" as "occurring from very little up to one-third of the time" and state that "since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday . . ." however, "**work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet . . .**" *Id.* (emphasis supplied).

The regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds" and state that, "even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs." *Id.* The regulations further state that "a job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work . . ." *Id.* The regulations define "frequent" as "occurring from one-third to two-thirds of the time" and state that "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.*

The RFC is the maximum a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545, 416.945. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). "A VE 'can testify whether particular applicants for disability benefits would be able to perform subcategories of jobs within the DOT.'" *Lee v. Barnhart*, 63 Fed. Appx. 291, 293 (9th Cir. 2003) (quoting *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir.1995)).

Here, the ALJ found plaintiff capable of lifting twenty pounds occasionally or ten pounds frequently, which is consistent with a light level of lifting, but the ability to stand and walk for only two hours, which is consistent with sedentary work. Thus, plaintiff's exertional limitations put him between two rules. The exact place plaintiff falls between those rules is difficult to determine because plaintiff also suffers from nonexertional limitations. The ALJ, therefore, did

what the caselaw and regulations directed him to do in this situation -- he enlisted the help of a VE, rather than relying on the grids that did not completely and accurately represent plaintiff's limitations. SSR 83-12; *Moore,* 216 F.3d at 870; *Tackett*, 180 F.3d at 1101. As such, I find that the ALJ did not err by enlisting the help of a VE.

The VE clearly considered plaintiff's inability to stand or walk for more than two hours when identifying subcategories of jobs that plaintiff could perform. The VE specifically stated that someone who could stand or walk for only two hours could perform work as a small products assembler and electronics worker because those jobs are done at a work bench, enabling the person to sit and stand at will. The VE also opined that someone with these limitations could perform only half of the packing line jobs available regionally and nationally. In total, the VE found that there were 562,266 national and 8,098 regional jobs appropriate for plaintiff's situation.

Because the VE incorporated all of plaintiff's limitations that the ALJ found credible, and because plaintiff does not dispute the ALJ's findings as to his functional abilities, I find that the VE appropriately identified subcategories of light jobs that someone with plaintiff's limitations could perform. *Lee*, 63 Fed. Appx. at 293; *Distasio*, 47 F.3d at 350. This was substantial evidence to support the ALJ's finding that plaintiff was not disabled. *Moore,* 216 F.3d at 869; see also *Moncada v. Chater*, 60 F.3d 521, 524 (9 Cir. 1995) (2,300 local and 64,000 national jobs supported denial of benefits). Thus, even assuming that the evidence rationally supports plaintiff's argument, it also clearly supports the ALJ's decision to use a VE, as well as the ALJ's subsequent ruling. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion which must be upheld." *Gallant v. Heckler*, 753 F.2d, 1450, 1453 (9th Cir. 1984). Accordingly, this Court finds that the ALJ did not err at step five.

## II.    POMS Rules

Plaintiff argues that the ALJ erred by failing to follow the Agency's POMS rules

applicable when a claimant's exertional capacity falls between two grid rules and the rules direct

opposite conclusions. Pl.'s Br. 2. Specifically, plaintiff argues that POMS DI 25025.015(D)

directs a finding of non-disabled when a claimant has only "a slightly reduced capacity for the

higher level of exertion," while a finding of disabled is required when a claimant has "a

significantly reduced capacity for the higher level of exertion." *Id.* at 8 (quoting POMS DI

25025.015(D)). Plaintiff asserts that "under agency policy, the 'primary difference between

sedentary and most light jobs' is the number of hours spent standing/walking" and, therefore, his

"stand/walk capacity of two hours represents a 'significantly reduced capacity' for the higher

level of exertion (light)" and, therefore, "an award of benefits is required under POMS." Pl.'s

Br. 8 (quoting SSR 83-10).

Plaintiff further argues that the POMS are binding on the ALJ and because the "ALJ's

findings were contrary to POMS DI 25025.015(D)," the ALJ's failure to follow the POMS

"mandates remand." Pl.'s Reply Br. 5-6. Plaintiff also asserts that contrary to *Lockwood v.*

*Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010), the case defendant cites in

support of its proposition that the POMS is not judicially enforceable, *Lockwood* pre-dates SSR

13-2p 2013 WL 621536 at *15, which made the POMS binding on ALJ's as a matter of explicit

agency policy. Pl.'s Reply Br. 5. Finally, plaintiff asserts that the "POMS are clearly binding on

the Agency as a matter of law" because the court in *Kolvick v. Astrue*, 2011 WL 4626014 (W.D.

Wa. Jul. 2011) found that "there is nothing in *Lockwood* to support the proposition that an ALJ,

or this court, may ignore the applicable SSRs." *Kolvick*, 2011 WL 4626014 at *9.

The Ninth Circuit has held that "Like HALLEX, POMS constitutes an agency

interpretation that does not impose judicially enforceable duties on either this court or the ALJ."
*Lockwood*, 616 F.3d at 1073 (citing *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir.2003) "We
have previously considered both publications [HALLEX and POMS] and concluded that neither
imposes judicially enforceable duties." (citing *Hermes v. Sec'y of Health & Human Servs.*, 926
F.2d 789, 791 n. 1 (9th Cir. 1991) "POMS is a policy manual and, therefore, does not have the
force and effect of law." (citing *Evelyn v. Schweiker*, 685 F.2d 351, 352 n.5 (9th Cir. 1982) "the
guidelines [POMS] do not have the force and effect of law." (citing *Schweiker v. Hansen*, 450
U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685, 690 (1981) a claims manual "is not a
regulation. It has no legal force, and it does not bind the SSA.")))).

SSR 13-2P is used to clarify the basic policy to be applied in disability claims where drug
addiction or alcoholism is present.[1] Section 15 of SSR 13-2P, which plaintiff cites in support of
his argument that the POMS is binding, states that in cases where adjudicators consider federal
district and circuit court decisions about drug addiction and alcoholism "[w]e require
adjudicators at all levels of administrative review to follow agency policy, as set out in the
Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other
instructions, such as the . . . POMS . . . and HALLEX." SSR 13-2P 2013 WL 621536 at *15.

Here, although the regulations state that the amount of walking and standing is the
primary difference between sedentary and most light jobs, the regulations also state that specific
jobs will dictate how often and long one will need to stand on one's feet. The VE identified
three such light jobs that plaintiff can perform. Moreover, as stated above, the Ninth Circuit has
held that the categories of work under the Social Security disability scheme are differentiated

---

[1] SSR 13-2P is titled "Evaluating Cases Involving Drug Addiction and Alcoholism" and has a
stated purpose of "clarify[ing] the basic policy applied in the evaluation of title II and title XZI
disability claims where drug addiction or alcoholism is present." SSR 13-2P.

primarily by step increases in lifting capacities, *Desrosiers*, 846 F.2d at 576, and the ALJ found

that plaintiff could lift at the light level.  Thus, even assuming that the evidence supports

plaintiff's argument, it also clearly supports the ALJ's decision.  *Gallant*, 753 F.2d at 1453.

     This Court also finds unpersuasive plaintiff's argument that *Kolvick* and SSR 13-2p

makes *Lockwood* inapplicable.  First, *Kolvick* is not binding on this Court.  However, assuming

arguendo that *Kolvick* was binding, plaintiff omitted a critical part of the *Kolvick* holding, which

states that "SSRs are issued by the Commissioner to clarify the Commissioner's regulations and

policies [and] . . . **do not have the force of law** . . ." *Kolvick*, WL 4626014 at *9 (emphasis

supplied) (internal quotations omitted).  Second, SSR 13-2p, addresses how adjudicators

consider federal district and circuit court decisions where drug addiction and alcoholism

problems are present.  Plaintiff made no claims that there were misinterpretations of policies

relating to drug addiction and alcoholism in this case.  Therefore, SSR 13-2P is inapplicable here

and does not change this Court's application of *Lockwood*, which plaintiff concedes "stands for

the proposition that the POMS are not judicially enforceable."  Pl.'s Reply Br. 5.  Accordingly,

because the POMS do not create a judicially enforceable duty on the ALJ, this Court rejects

plaintiff's reliance on the POMS to overturn the ALJ's conclusions.

## CONCLUSION

     Because the Commissioner's decision is based on proper legal standards and supported

by substantial evidence, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

     DATED this ___20___ day of January, 2016.

                       Michael McShane
                United States District Judge